**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JIE CHEN, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| BAYER CORPORATION, and BAYER HEALTHCARE LLC, | |
| Defendant. | |

Plaintiff Jie Chen ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendants Bayer AG, Bayer Corporation and Bayer Healthcare, LLC (collectively, "Bayer" or "Defendants") and states as follows:

**<u>NATURE OF THE ACTION</u>**

1. This is a consumer protection class action arising out of Defendants' false advertising of their One A Day Men's Pre-Conception Health Multivitamin (the "OAD Product").

2. Defendants claim their OAD Product "support[s] healthy sperm." As the National Advertising Division ("NAD") recently found, this claim "reasonably convey[s] the message that the [OAD Product] improves men's chances of conception," "sperm health[,] and viability."[1]

3. However, as the NAD also recently found, the ingredients in the OAD Product *do not* actually support these claims.[2] Thus, the claim that the OAD Product "supports healthy sperm" is false and misleading.

---

[1] NATIONAL ADVERTISING DIVISION RECOMMENDS BAYER MODIFY OR DISCONTINUE CERTAIN ONE A DAY MEN'S PRE-CONCEPTION HEALTH COMPLETE MULTIVITAMIN CLAIMS (Mar. 31, 2026), https://bbbprograms.org/media/newsroom/decisions/bayer-healthcare (the "NAD RULING").

[2] *Id.*

4. Defendants communicated the same substantive message throughout their advertising and marketing for the OAD Product, including on the bottle itself and on the front of the OAD Product's packaging. Each person who purchased the OAD Product has been exposed to Defendants' misleading advertising message multiple times.

5. As a result of the misleading messages conveyed by their marketing, Defendants have caused Plaintiff and Class Members to purchase a product that does not perform as represented. Plaintiff and other similarly situated consumers have been harmed in the amount of the price premium they paid as a result of Defendants' false and misleading representations.

6. Plaintiff brings claims on behalf of himself and all other similarly situated New Yorker purchasers of the OAD Product for (i) violation of New York General Business Law ("GBL") § 349; and (ii) violation of GBL § 350.

**THE PARTIES**

7. Plaintiff Jie Chen is and was at all relevant times an individual residing in Queens County, New York with an intent to remain there, and is therefore a citizen of New York. In June 2024, while in New York, Mr. Chen purchased a bottle of the OAD Product from Amazon for $15. In purchasing the OAD Product, Mr. Chen was exposed to the representation that the OAD Product "support[s] healthy sperm." This claim reasonably conveyed the message that the OAD Product would improve Mr. Chen's chances of conception and support sperm health and vitality. Had Mr. Chen known this claim was not true, he would not have purchased the OAD Product, or he would have paid less for it than he did but for Defendants' false and misleading representations. Further, while Mr. Chen used a gift card to purchase the OAD Product, he would not have had to use as much of his gift card balance as he did (*i.e.,* he would have paid less for the OAD Product than he did) but for Defendants' false and misleading representations. Accordingly, Mr. Chen was injured in the form of the price premium he paid as a result of Defendants' misrepresentations.

8. Defendant Bayer Corporation is an Indiana corporation wholly owned by Bayer AG with its headquarters at 100 Bayer Boulevard, Whippany, New Jersey 07981.

9. Defendant Bayer Healthcare LLC is a Delaware limited liability company wholly owned by Bayer Corporation with its headquarters at 100 Bayer Boulevard, Whippany, New Jersey 07981.

10. Defendants advertise, market, distribute, and sell the OAD Product to millions of customers across the United States and in the State of New York.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000, exclusive of interest and costs, there are over 100 members of the putative class, and at least one member of the proposed Class is a citizen of a different state than at least one Defendant.

12. Defendant Bayer Healthcare LLC is an "unincorporated association" under CAFA and is therefore "a citizen of the State where it has its principal place of business [New Jersey] and the State under whose laws it is organized [Indiana]." *See* 28 U.S.C. § 1332(d)(10).

13. This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within New York, such that Defendants have significant, continuous, and pervasive contacts with the state of New York.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**STATEMENT OF FACTS**

15.     "The fertility rate [in the United States] has been falling since 2007."[3]  Specifically among men, "[o]ver the past 50 years, human sperm counts appear to have fallen by more than 50% around the globe, according to an updated review of medical literature."[4]

16.     A fertility supplement market has arisen to fill this demand and (allegedly) combat increasing infertility.  That market "generated $1,754.00 million in 2020 and is projected to reach $3,652.50 million by 2030."[5]  One player in the fertility market is Bayer, "a life science company and a global leader in healthcare … and nutrition."[6]

17.     Specifically, Defendants market, advertiser, and sell the OAD Product, which represents that it "support[s] healthy sperm" on the front of every bottle and packaging:

 

---

[3] Sabrina Tavernise, *U.S. Fertility Rates Drop to Another Record Low*, THE NEW YORK TIMES (Apr. 9, 2026), https://www.nytimes.com/2026/04/09/us/fertility-rates-decline.html

[4] Brenda Goodman, *Sperm Counts May Be Declining Globally, Review Finds, Adding To Debate Over Male Fertility*, CNN (Nov. 18, 2022), https://www.cnn.com/2022/11/18/health/sperm-counts-decline-debate/index.html.

[5] ALLIED MARKET RESEARCH, FERTILITY SUPPLEMENT MARKET (2020-2030) (Sept. 2021), https://www.alliedmarketresearch.com/fertility-supplements-market-A07134.

[6] ABOUT US, https://www.bayer.com/en/about-us.

18.     Defendants' other marketing of the OAD Product reinforces these messages.  For instance, Defendants note men "should prep for pre-conception too" and "do their part by supporting the health of their sperm."[7]

19.     Similarly, in the FAQs for the OAD Product, Defendants instruct men to take the OAD Product "for at least three months before conceiving and while trying to conceive" and "is specially formulated with key levels of powerful antioxidants … to support healthy sperm"[8]:

| I already take One A Day® Men's Health Formula; why should I take the Pre-Conception Health Multivitamin instead? − |
| --- |
| One A Day® Men's Pre-Conception Health Multivitamin is specially formulated with key levels of powerful antioxidants, like Vitamins C and E, to support healthy sperm.* |

| When should I start taking One A Day® Men's Pre-Conception Health Multivitamin? When should I stop? − |
| --- |
| Men can benefit by taking One A Day® Men's Pre-Conception Health Multivitamin for at least three months before conceiving and while trying to conceive. You can continue to take this multivitamin for as long as you like, although you may choose to stop once conception occurs. If you do choose to stop, we recommend that you continue with One A Day® Men's Health Multivitamin. |

20.     Defendants also represent that to create its multivitamin products, including but not limited to the OAD Product, it employs an "experienced team of researchers, scientists and brand enthusiasts [who] work together to identify the top health concerns and desires for specific groups" and "research important dietary nutrients in developing our unique formulas." Likewise, Defendants' multivitamins, including but not limited to the OAD Product, "are put through over 100 rigorous quality checks to ensure things like consistency and accuracy … to provid[e] you with the nutrients you may need at the best quality we can provide"[9]:

---

[7] MEN SHOULD PREP FOR PRE-CONCEPTION TOO, https://www.oneaday.com/vitamins/prenatal-pregnancy-vitamins/men-should-prep-for-pre-conception-too.

[8] FAQ, https://www.oneaday.com/faq (Men's Pre-Conception).

[9] WHY CHOOSE ONE A DAY VITAMINS, https://www.oneaday.com/why-choose-one-a-day-vitamins.

**Quality That Stands Up to 100+ Tests**

We're tough critics when it comes to quality. Our multivitamins are put through over 100 rigorous quality checks to ensure things like consistency and accuracy. We're committed to providing you with the nutrients you may need at the best quality we can provide.

**Formulas Designed by Experts**

To create our multivitamins, our experienced team of researchers, scientists and brand enthusiasts work together to identify the top health concerns and desires for specific groups. We research important dietary nutrients in developing our unique formulas.

21. As the NAD found, this messaging—including the "supports health sperm" claim—reasonably conveys that the OAD Product "improves men's chances of conception" and "improves sperm health and vitality."[10]

22. Defendants charge more for the OAD Product than they otherwise would (*i.e.*, charge a price premium) as a result of the "supports healthy sperm" claim on the OAD Product and/or the message that it conveys—that the OAD Product improves men's chances of conception, sperm health, and vitality."

23. For example, as compared to Defendants' standard One A Day Multivitamin Product, Defendants' charge more per pill for the OAD Product than the standard variant on Defendants' Amazon storefront:

//

//

//

---

[10] NAD RULING, https://bbbprograms.org/media/newsroom/decisions/bayer-healthcare.

| Brand/Product | Quantity | Price | Price Per Pill[11] |
|---|---|---|---|
| One A Day Men's Pre-Conception Multivitamin[12] | 30 Count | $14.99 | $0.50 |
| One A Day Men's Multivitamin[13] | 200 Count | $17.47 | $0.09 |

24. Recently, one of Defendants' competitors challenged the claims on the OAD Product before the Better Business Bureau's National Advertising Division. Specifically, Defendants' competitor challenged the OAD Product's claims that it "supports healthy sperm and contains 'powerful' antioxidants, including lycopene, as well as [Defendants'] use of the term "complete multivitamin."[14]

25. The NAD "found that certain claims, including that men should take the product for at least three months before conception and that the product is specially designed to provide nutritional support while trying to conceive, reasonably convey the message that the product improves men's chances of conception."[15]

26. The NAD "also found that, in the fertility-focused context, certain claims that the product supports healthy sperm reasonably convey the message that the product improves sperm health and viability."[16]

27. After evaluating the evidence, the NAD "found that the ingredient testing in the

---

[11] Calculated by dividing the total price of the product by the number of pills in the bottle.

[12] Available at https://tinyurl.com/5dsn95k2.

[13] Available at https://tinyurl.com/mthpfp68.

[14] NAD RULING, https://bbbprograms.org/media/newsroom/decisions/bayer-healthcare.

[15] *Id*.

[16] *Id*.

record *did not support the challenged claims* and recommended that Bayer discontinue or modify these claims *to avoid conveying the unsupported message* that the Men's Pre-Conception Health Complete Multivitamin will improve chances of conception or that it improves sperm health and viability."[17]

28. Accordingly, Defendants' representation that its OAD Product "supports healthy sperm" and/or the message that this representation conveys—that the OAD Product improves men's chances of conception, sperm health, and vitality"—is false and misleading.

29. Plaintiff and the Class Members paid a premium for the OAD Product as a result of Defendants' claim that the OAD Product "supports healthy sperm" and/or the message that this claim conveys—that the OAD Product improves men's chances of conception, sperm health, and vitality." This claim was material to Plaintiff and Class Members in that, had Plaintiff and Class Members known this claim was false and misleading, they would not have paid as much for the OAD Product as they did. Accordingly, Plaintiff and Class Members were injured in the amount of the price premium they each paid as a result of Defendants' false and misleading representations.

<u>**CLASS ALLEGATIONS**</u>

30. Plaintiff seeks to represent a class defined as all persons who purchased Defendants' One A Day Men's Pre-Conception Health Multivitamin in the State of New York from during the applicable statute of limitations period (the "Class"). Excluded from this Class are Defendants and their officers, directors, and employees, and those who purchased supplements for the purpose of resale. Also excluded from the Class are any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

---

[17] *Id.* (emphasis added).

31. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

32. **Numerosity.** Class Members are so numerous that individual joinder is impracticable. Plaintiff reasonably estimates there are thousands of Class Members. Although the precise number of Class Members is unknown to Plaintiff, the true number of Class Members is known by Defendants and may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

33. **Existence and Predominance of Common Questions of Law and Fact.** This action involves common questions of law and fact, which predominate over questions affecting individual class members. These common legal and factual questions include, but are not limited to, the following:

(i) whether the OAD Product "supports healthy sperm" and improves sperm healthy, sperm viability, and men's chances for conception;

(ii) whether the OAD Product's claims would likely to mislead the reasonable consumer;

(iii) whether the OAD Product's claims were material to the reasonable consumer; and

(iv) whether Plaintiff and Class Members sustained economic injury as a result of Defendants' representations, and the proper measure of that injury.

34. **Typicality.** Plaintiff's claims are typical of the claims of the Class Members because Plaintiff purchased the OAD Product in New York, was exposed to and paid a price premium as a result of Defendants' false and misleading representations, and sustained the same economic injury as every Class Member. Plaintiff is advancing the same claims and legal theories

on behalf of himself and all Class Members.

35. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

36. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiff and Class Members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgements arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties, as well as the court system, from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court. The class action device presents no unusual management difficulties under the circumstances here.

<u>**CAUSES OF ACTION**</u>

<u>**COUNT I**</u>
**VIOLATION OF GBL § 349**

37. Plaintiff incorporates by reference and realleges the allegations above as if fully set forth herein.

38. Plaintiff brings this claim individually and on behalf of the Class against Defendants.

39. Defendants committed deceptive acts and practices by employing false, misleading, and deceptive representations about its OAD Product. Specifically, Defendants represented that the OAD Product "supports healthy sperm," which conveyed the message that the OAD Product improved sperm health, sperm viability, and men's chances of conception. Those claims and representations were not true in that the OAD Product does *not* support healthy sperm, and does *not* improve sperm health, sperm viability, and men's chances of conception.

40. Defendants' deceptive acts and practices were directed at consumers.

41. Defendants' deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the benefits of the OAD Product.

42. As a direct and proximate result of Defendants' false, misleading, and deceptive representations, Plaintiff and Class Members were injured in that they would not have purchased the OAD Product, or would have paid substantially less for it, but for Defendants' false and misleading representations. In other words, Plaintiff and Class Members each paid more for the OAD Product than they otherwise would have as a result of Defendants' false, misleading, and deceptive representations.

43. On behalf of himself and the Class, Plaintiff seeks to recover his actual damages or fifty (50) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT II**
**VIOLATION OF GBL § 350**

44. Plaintiff incorporates by reference and realleges the allegations above as if fully incorporated herein.

45. Plaintiff brings this claim individually and on behalf of the Class against Defendants.

46. Defendants engaged in a campaign of false advertising with regard to the benefits of the OAD Product. Specifically, Defendants represented that the OAD Product "supports healthy sperm," which conveyed the message that the OAD Product improved sperm health, sperm viability, and men's chances of conception. Those claims and representations were not true in that the OAD Product does *not* support healthy sperm, and does *not* improve sperm health, sperm viability, and men's chances of conception.

47. Defendants' deceptive acts and practices were directed at consumers and were likely to mislead a reasonable consumer acting reasonably under the circumstances.

48. Defendants' misrepresentations have resulted in consumer injury or harm to the public interest.

49. Defendants' deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the benefits of the OAD Product.

50. As a direct and proximate result of Defendants' false, misleading, and deceptive representations, Plaintiff and Class Members were injured in that they would not have purchased the OAD Product, or would have paid substantially less for it, but for Defendants' false and misleading representations. In other words, Plaintiff and Class Members each paid more for the OAD Product than they otherwise would have as a result of Defendants' false, misleading, and deceptive representations.

51. On behalf of himself and the Class, Plaintiff seeks to recover his actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of the alleged Class, that the Court enter judgment in Plaintiff's favor and against Defendants as follows:

(i)   for an order certifying the Class under Fed. R. Civ. P. 23, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(ii)   declaring that Defendants' conduct violates the statutes referenced herein;

(iii)   finding in favor of Plaintiff and the Class against Defendants on all counts asserted herein;

(iv)   for compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(v)   awarding Plaintiff and Class Members their costs and expenses incurred in the action, including reasonable attorney's fees;

(vi)   ordering Defendants to pay pre-judgment interest on all amounts awarded; and

(vii)   Providing such further relief as may be just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims so triable.

Dated: May 6, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Max S. Roberts*
        Max S. Roberts

Max S. Roberts
Caroline C. Donovan
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com
            cdonovan@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*pro hac vice forthcoming*)
Joshua B. Glatt (*pro hac vice forthcoming*)

1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail:  ltfisher@bursor.com
　　　　 jglatt@bursor.com

*Attorneys for Plaintiff*